Maureen STEWART and Kelly Lamicella, individuals, on behalf of themselves and all others similarly situated, et al., Plaintiffs,

v.

BEAM GLOBAL SPIRITS & WINE, INC., et al., Defendants.

Civil Action No. 11–5149 (NLH/KMW).

United States District Court,
D. New Jersey.

June 29, 2012.

Barbara Spillman Schweiger, Esq., David Benjamin Wolfe, Esquire, Evan Andrew Showell, Esq., Skoloff & Wolfe, P.C., Livingston, NJ, for Plaintiffs.

John B. Kearney, Esq., Michael Robert Carroll, Ballard, Spahr LLP, Cherry Hill, NJ, for Defendants Beam Global Spirits & Wine, LLC and Jim Beam Brands Co.

David E. Sellinger, Esq., Greenberg Traurig LLP, Florham Park, NJ and Laura D. Castner, Kinsella Weitzman Iser Kump & Aldisert LLP, Santa Monica, CA, for Defendant Bethenny Frankel.

Aaron Van Nostrand, Esq., David E. Sellinger, Esq., Greenberg Traurig LLP, Florham Park, NJ, for Defendants Skinny Girl Cocktails, LLC and SGC Global, LLC.

## OPINION

HILLMAN, District Judge.

This matter comes before the Court by way of motion [Doc. No. 10] for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) by Defendants Beam Global Spirits and Wine LLC [1] and Jim Beam Brands Co. (hereinafter, "the Beam Defendants") seeking the dismissal with prejudice of Plaintiffs' claim for unjust enrichment as set forth in the second amended class action complaint [Doc. No. 70].[2] Plaintiffs oppose the Beam Defendants' motion. The Court has considered the parties' submissions, and decides this matter pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Beam Defendants' motion is denied.

## I. JURISDICTION

The Court exercises jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA").

## II. BACKGROUND

Plaintiffs Maureen Stewart, Kelly Lamicella, and Nicole Bello bring this putative class action on behalf of themselves and a nationwide class of consumers consisting of "[a]ll persons ... who purchased Skinny Girl Margarita products from the launch of the product to" September 6, 2011.[3] (Second Am. Compl. [Doc. No. 70] ¶ 36.) Plaintiffs essentially alleged that despite being marketed and sold as "all natural", Defendants' alcoholic beverage product known as "Skinny Girl Margarita" contains a chemical preservative. (Id. ¶¶ 2–3.)

---

1. Plaintiffs' original complaint named "Beam Global Spirits and Wine, Inc." as a Defendant in this action. Plaintiffs' second amended complaint clarifies that "Beam Global Sprits and Wine, Inc." is now known as "Beam Global Spirits and Wine, LLC". (Second Am. Compl. [Doc. No. 70] ¶ 1(d).)

2. The Beam Defendants' motion for judgment on the pleadings was filed on November 18, 2011 in response to the allegations made in Plaintiffs' October 17, 2011 amended class action complaint [Doc. No. 5]. On June 4, 2012, Plaintiffs sought leave to file a second amended class action complaint in this matter for the asserted sole purpose of adding another named Plaintiff, Nicole Bello. (See Mem. of Law in Supp. of Pls.' Mot. for Leave to Amend the First Am. Compl. [Doc. No. 60-2] 2.) On June 21, 2012, while the motion to amend was pending, all parties stipulated to Plaintiffs' filing of the second amended class action complaint attached as Exhibit A to the motion to amend. The second amended class action complaint was filed on June 29, 2012. Accordingly, the pending motion [Doc. No. 60] for leave to amend will be dismissed as moot.

Having reviewed Plaintiffs' second amended class action complaint and compared it to the amended class action complaint, the Court notes that the allegations of Plaintiffs' unjust enrichment claim are identical in both complaints. Although the Beam Defendants' present motion seeks dismissal of Plaintiffs' unjust enrichment claim as set forth in the amended class action complaint as opposed the second amended class action complaint, the Court may properly consider the Beam Defendants' motion at this time because the allegations in support of this claim remain unchanged. Moreover, the Beam Defendants represented to the Court that they are prepared to rest on the current briefing of this motion given the identical allegations between the two complaints. (Letter from Michael R. Carroll, Esquire dated June 26, 2012 [Doc. No. 68] 1.)

3. The second amended complaint specifies that the class includes all persons who purchased these products "from the launch of the product to the date of Plaintiffs' original complaint." (Id. ¶ 36.) Plaintiffs' original complaint was filed on September 6, 2011.

According to Plaintiffs, Defendants engaged in an "extensive media campaign" in several states including, but not limited to, New Jersey, New York, and Florida, wherein Defendants "expressly and impliedly" claimed that Skinny Girl Margarita was "all natural", did not contain any preservatives, was a "healthy alternative to other commercial Margarita products presently available", and used only natural ingredients. (*Id.* ¶¶ 2, 29.) Plaintiffs contend that these claims by Defendants are false, deceptive, misleading, and fraudulent because Skinny Girl Margarita actually contains sodium benzoate, a chemical preservative, which can become a "potential carcinogen" when mixed with acids such as citric acid from lime juice used in margaritas. (*Id.* ¶¶ 3–4, 7–9, 30.) Furthermore, Plaintiffs assert that Defendants made these claims "without any reasonable basis for doing so and, in fact, knowing at the time they were made that such claims were in fact false and/or misleading[.]" (*Id.* ¶ 32.)

Plaintiffs allege that they have been "routinely purchasing" Skinny Girl Margarita for their "own use and enjoyment as well as for entertaining friends" for the past several years. (*Id.* ¶¶ 7–9.) Plaintiffs, who are "generally health conscious and attempt[ ] to purchase 'all natural' products when available[,]" allegedly purchased Skinny Girl Margarita based on Defendants' representations in magazine advertisements and on the product packaging that Skinny Girl Margarita was an " 'all natural' healthier alternative to other commercially-available Margarita beverage products." (*Id.* ¶¶ 7–9, 32.) Based on these allegations, Plaintiffs bring claims against all Defendants for violations of the New Jersey Consumer Fraud Act, negligent misrepresentation, breach of express and implied warranty, and unjust enrichment. (*Id.* ¶¶ 47–78.)

## III. *DISCUSSION*

The Beam Defendants filed an answer to Plaintiffs' amended class action complaint on November 14, 2011. (*See* Beam Defs.' Answer [Doc. No. 7].) The Beam Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and seek the dismissal with prejudice of Plaintiffs' unjust enrichment claim for failure to state a claim upon which relief may be granted. (Mem. of Law in Supp. of Beam Defs.' Mot. for J. on the Pleadings Dismissing Pls.' Unjust Enrichment Claim [Doc. No. 10–1] (hereinafter, "Beam Defs.' Mem.") 2.) Rule 12(c) provides in pertinent part that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir.2010) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir.1991)).

After the Beam Defendants answered Plaintiffs' amended class action complaint and filed the present motion, Plaintiffs filed a second amended class action complaint on June 29, 2012. The Beam Defendants have represented to the Court that they are prepared to rest on the briefing of the present motion because the allegations of the unjust enrichment claim remain unchanged from the amended complaint to the second amended complaint. However, the Court notes that at this time the Beam Defendants cannot move for judgment on the pleadings under Rule 12(c) because they have not technically answered Plaintiffs' second amended complaint. Therefore, the Court will construe the Beam Defendants' motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(6), particularly because

the same standard applies for either motion.

In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks " 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions[.]' ") (citation omitted). First, under the *Twombly/Iqbal* standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009) (citing *Iqbal,* 129 S.Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Fowler,* 578 F.3d at 211 (citing *Iqbal,* 129 S.Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." *Fowler,* 578 F.3d at 211; *see also Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) ("The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus:

'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir.2005).

## IV. ANALYSIS

According to the Beam Defendants, Plaintiffs' cause of action for unjust enrichment "is precluded where, as here, Plaintiffs claim to have purchased the [Skinny Girl Margarita] product not from the defendants but from a third-party retailer." (Beam Defs.' Mem. 2.) Relying on New Jersey law, the Beam Defendants contend that on a claim for unjust enrichment, Plaintiffs are required to show that they conferred a benefit upon the Beam Defendants. (*Id.* at 3.) Citing several cases from other courts in this District, the Beam Defendants argue that "[w]hen purchasers … buy a product from a third-party retailer … they have not conferred a benefit upon the manufacturer sufficient to support a claim for unjust enrichment." (*Id.* at 3–4.) The Beam Defendants contend, therefore, that Plaintiffs' claim for unjust enrichment fails because Plaintiffs admit in the second amended complaint that they bought Skinny Girl Margarita from various liquor stores in New Jersey and not directly from a manufacturer like the Beam Defendants. (*Id.* at 3.) According to the Beam Defendants then, "[a]t best, Plaintiffs' allegations would point to a claim against the liquor stores upon which they allegedly conferred a benefit." (*Id.* at 4.)

## A. Choice of Law

As a threshold matter, the Court notes that the Beam Defendants do not engage in a choice of law analysis on this motion and simply argue that New Jersey law governs Plaintiffs' unjust enrichment claims. (*Id.* at 3 n. 1.) Plaintiffs apparently recognize that New Jersey law applies to the unjust enrichment claims of the named Plaintiffs, but note that this is a proposed nationwide class which may include class members that are neither New Jersey residents, nor New Jersey purchasers. (Pls.' Mem. of Law in Opp'n [Doc. No. 29] 2 n. 1.) Therefore, Plaintiffs ask the Court to defer consideration of this motion *in its entirety until after class certi-*fication in order to conduct a proper choice of law analysis at that time to determine the law applicable to this claim. (*Id.*) In reply, the Beam Defendants represent that they do "not discuss choice of law principles since it is uncontested that New Jersey law should govern the claims alleged by the Plaintiffs[.]" (Reply Br. in Supp. of Beam Defs.' Mot. for J. on the Pleadings [Doc. No. 35] (hereinafter, "Beam Defs.' Reply"), 2 n. 1.)

Specifically in reference to the unjust enrichment claims of the named Plaintiffs, it appears to be uncontested that these claims are governed by New Jersey law because these individuals either are residents of New Jersey, purchased Skinny Girl Margarita from retailers in New Jersey, or both. The Court recognizes, though, that this is a proposed nationwide class action, not yet certified, and that the claims of potential absent class members may be governed by the laws of other states. However, at this stage of the proceedings, the parties have not fully briefed the choice of law issue on any of Plaintiffs'

claims, and the Court will not engage in a choice of law analysis here without the benefit of briefing on this issue by the parties. Accordingly, the Court's ruling on the sufficiency of Plaintiffs' unjust enrichment claims as alleged in the second amended class action complaint will be determined under New Jersey law, but this ruling is limited to the claims of the named Plaintiffs and those of absent class members whose claims would be governed by New Jersey law.[4]

## B. Unjust Enrichment

■ To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (1994); *see also Callano v. Oakwood Park Homes Corp.*, 91 N.J.Super. 105, 219 A.2d 332, 334 (N.J. 1966). For an unjust enrichment claim to succeed, there must be a showing that "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano*, 219 A.2d at 334–35; *see also VRG Corp.*, 641 A.2d at 526. The New Jersey Supreme Court has previously explained that unjust enrichment is a form of quasi-contractual liability, and that "quasi-contract cases involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit." *Callano*, 219 A.2d at 335 (emphasis added).

In the present motion, the Beam Defendants cite to approximately twelve decisions by other courts within this District to

---

4. To the extent the parties subsequently file dispositive motions in this case, the parties should fully brief any relevant choice of law issues that arise with respect to Plaintiffs' claims.

argue that "[i]t is well-settled under New Jersey law, that a plaintiff who purchases a product from a third-party retailer may not maintain an unjust enrichment claim against the product manufacturer." (Beam Defs.' Reply 2–3) (citing cases). If the Court accepts the Beam Defendants' argument on its face, then Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs' clearly allege in the second amended complaint that they purchased Skinny Girl Margaritas from liquor stores in New Jersey and not directly from the Beam Defendants. (*See* Second Am. Compl. ¶¶ 7–9.)

While this Court may properly consider the opinions of other courts in this District in deciding the present motion, the Court is not bound by any of the decisions the Beam Defendants submit in support of the motion. Seemingly recognizing this fact, the Beam Defendants request that "this Court simply rule in accordance with the other dismissals in this District of unjust enrichment claims in cases, such as here, where the consumer has not conferred a direct benefit upon the manufacturer." (Beam Defs.' Reply 5–6.) While the Beam Defendants accurately represent the holdings of the other cases in this District addressing this issue and while the weight of that authority is certainly in their favor, this Court must engage in its own analysis of the applicable law.

As a federal court sitting in diversity in this case, the Court must look to New Jersey law to determine whether Plaintiffs' unjust enrichment claim should be dismissed. The best source for that law are the decisions of the New Jersey state courts. Therefore, the Court will review of the relevant New Jersey case law to decide this issue. Despite the Beam Defendants' contention that it is a "well-settled" principle of New Jersey law that a plaintiff who purchases a product from a

third-party retailer may not maintain an unjust enrichment claim against the product manufacturer, the Beam Defendants have not cited a single case from any court within the state of New Jersey which expressly confirms this specific principle of law. (*See generally* Beam Defs.' Mem. 1–4; Beam Defs.' Reply 1–6) (citing only cases from the District of New Jersey for this proposition).

Generally, cases from other courts within this District which have precluded a claim for unjust enrichment in a consumer class action context based on the fact that the consumer purchases were made through a third-party retailer and not the product manufacturer, such as *Cooper v. Samsung Electronics America, Inc.,* No. 07–3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (J. Linares), and *Alin v. American Honda Motor Co.,* No. 08–4825, 2010 WL 1372308, at *14–15 (D.N.J. Mar. 31, 2010) (J. Hayden), focus on language regarding the need for "some direct relationship" between the parties or a mistake on the part of the party conferring the benefit.

The significance of the parties having "some direct relationship" in the context of a claim for unjust enrichment can only be properly understood upon examination of the specific fact pattern presented in *Callano* where that concept originated. In *Callano,* an individual by the name of Bruce Pendergast entered into a contract with the defendant, a housing developer, for the sale of a lot and a house to be constructed thereon. *Callano,* 219 A.2d at 334. Subsequently, while the house was still under construction by the defendant developer, Pendergast entered into a separate contract with the plaintiffs, owners of a plant nursery, for the delivery and planting of shrubbery at the house. *Id.*

The plaintiffs performed on the contract they entered with Pendergast, planting the

shrubbery at the house, but Pendergast never paid the plaintiffs. *Id.* Shortly thereafter, Pendergast died. *Id.* At that time, the defendant developer and Pendergast's estate cancelled the contract of sale for the lot and the house. *Id.* The defendant developer then sold the Pendergast property, including the newly planted shrubbery thereon, to another couple. *Id.* At the time, however, the defendant developer had no knowledge of Pendergast's failure to pay the plaintiffs on the shrubbery contract. *Id.*

Based on these facts, the New Jersey Supreme Court denied recovery to the plaintiffs on a quasi-contract theory, and explained the need for "some direct relationship" between the parties as follows:

> In the instant case the plaintiffs entered into an express contract with Pendergast and looked to him for payment. They had *no dealings with defendant,* and did not expect remuneration from it when they provided the shrubbery. No issue of mistake on the part of plaintiffs is involved. Under the existing circumstances we believe it would be inequitable to hold defendant liable. Plaintiffs' remedy is against Pendergast's estate, since they contracted with and expected payment to be made by Pendergast when the benefit was conferred.

*Id.* at 335. Accordingly, the New Jersey Supreme Court held that the defendant developer "was not unjustly enriched and [was] not liable for the value of the shrubbery." *Id.* In rejecting the plaintiffs' claim for unjust enrichment, the New Jersey Supreme Court also distinguished *Callano* from another case by explaining that recovery was permitted in the other case "because of a fraud perpetrated by the defendants." *Id.* In the absence of any contention of fraud on the part of the defendant developer in *Callano*, the Supreme Court declined to permit recovery. *Id.*

This Court's review of *Callano* suggests that the plaintiffs could not recovery from the defendant developer there on a claim for unjust enrichment without the existence of "some direct relationship" because the defendant developer was essentially an innocent third-party. The defendant developer had no contact or course of dealings with the plaintiffs, was unaware of the contract between the plaintiffs and Pendergast, and did not engage in any fraud or conduct which otherwise justified recovery against it. The Supreme Court also explained that recovery on a claim for unjust enrichment "was developed under the law to provide a remedy where none existed." *Id.* Recognizing that the Callano plaintiffs could pursue a remedy against Pendergast's estate, the Supreme Court did not impose liability on the defendant developer. *Id.*

This notion—that the existence of "some direct relationship" between the parties is meant to protect innocent third-parties from liability where they did not unjustly retain a benefit conferred upon them by the plaintiff—was similarly recognized in *VRG Corp. v. GKN Realty Corp.* In *VRG Corp.*, the plaintiff was a real estate broker which specialized in obtaining long term tenants for commercial properties. 641 A.2d at 520–21. The plaintiff real estate broker entered into an exclusive agreement with a corporation known as Golden Reef, the owner and developer of the commercial shopping center, which entitled the plaintiff real estate broker to a six percent (6%) commission of each monthly rental payment received from tenants the real estate broker procured for the shopping center. *Id.* at 521. Subsequently, Golden Reef entered into a separate contract for the sale of the shopping center to GKN Realty Corporation. *Id.* Under the plain-

tiff real estate broker's contract with Golden Reef, the real estate broker was still entitled to monthly rental commissions. *Id.* When the shopping center was sold to GKN Realty, Golden Reef failed to tender the payoff amount for the commissions due to the plaintiff real estate broker. *Id.* at 521–522. As a result, the plaintiff real estate broker brought suit against both Golden Reef and GKN Realty and sought the remedy of an equitable-lien on the monthly rental income of the shopping center owned at that time by GKN Realty, not Golden Reef. *Id.* at 526.

On appeal, the New Jersey Supreme Court concluded that there was no basis for the imposition of an equitable lien on the rental incomes on the grounds of unjust enrichment. *Id.* Reviewing the facts of the case, the Supreme Court recognized that it was Golden Reef which was unjustly enriched under the circumstances because it was able to sell the shopping center to GKN Realty for $9.8 million which represented the center's fair market value taking into account the fact that the property was rented and generating rental income. *Id.* According to the Supreme Court, any leasing commissions due to the plaintiff real estate broker as a result of the agreement between plaintiff and Golden Reef were still due to be paid by Golden Reef. *Id.*

Therefore, the Supreme Court determined that while the plaintiff real estate broker might be entitled to an equitable lien on the proceeds of the sale of the shopping center (i.e., the property of Golden Reef), the plaintiff improperly sought an equitable lien on the monthly rental income itself (i.e., the property of GKN Realty). *Id.* The Supreme Court further explained that unjust enrichment could not serve as a basis to impose an equitable lien on the rental incomes because "GKN, in paying fair market value for the shopping center, did not receive an unexpected benefit or undeserved windfall [simply] because Golden Reef later broke its promise to pay [the real estate broker's] commissions." *Id.* The Court further noted that "[t]here simply [was] no evidence in the record to demonstrate that GKN was unjustly enriched at the expense of [the real estate broker] and that its property should now be subjected to a lien to enforce an obligation owed by Golden Reef." *Id.* at 526–27. The Supreme Court therefore would not impose liability on GKN Realty where they did not unjustly retain a benefit from the plaintiff and where plaintiff could seek a remedy against Golden Reef regarding the profits of the sale.

A careful reading of the New Jersey Supreme Court's reasoning given the facts in *Callano* and *VRG Corp.* guides this Court's interpretation of New Jersey law and the notion that "some direct relationship" exist between parties on an unjust enrichment claim. The facts in *Callano* and *VRG Corp.* demonstrate to this Court that the "some direct relationship" element of an unjust enrichment claim does not standing alone preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer and not directly from the manufacturer. The Court rejects that such a bright light rule is supported by New Jersey law despite the Beam Defendants argument to the contrary.[5]

5. In rejecting this bright line rule, the Court notes that while Judge Hayden ultimately dismissed the plaintiff's unjust enrichment claim in *Alin,* that dismissal was based, in part, on the insufficient allegations of the plaintiff's complaint. However, Judge Hayden similarly rejected application of a bright line rule and aptly explained that "[i]n New Jersey, a benefit conferred upon a retailer not sharing in profits with the product manufacturer does

In the Court's view, the recognition that "some direct relationship" should exist between the parties to an unjust enrichment claim simply reflects the need to curtail the reach of this equitable remedy—a so called "legal fiction"—to prevent a finding of liability in cases where the defendant had absolutely no course of dealings with, and no other demonstrated connection to, the plaintiff. The notion that "some direct relationship" exist between the parties is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims.

The Court finds that *Callano* and *VRG Corp.* are factually distinguishable from the present case because they involved defendants who were innocent third parties (the housing developer and the subsequent shopping center owner) who did not unjustly retain a benefit, did not engage in allegedly fraudulent conduct, and had little to no dealings with the plaintiffs who sought relief against them. Moreover, in both cases, the plaintiffs had available a remedy against another party with whom the plaintiffs had independent contracts and whose conduct resulted in plaintiffs' losses. Here, the Beam Defendants are alleged to be something other than innocent third-parties. Plaintiffs allege that the Beam Defendants engaged in fraudulent conduct and misrepresented the "all-natural" nature of Skinny Girl Margarita through a direct nationwide advertising and marketing scheme which included the use of product packaging, taxi cab signboards, billboards, the Internet, and print publications specifically designed to entice consumers to buy Skinny Girl Margarita. It does not strain credulity to suggest that some of these marketing strategies may have been employed at the retail level and coordinated with the retailers themselves.

■ This Court is of the view that it would be inequitable to suggest that the Beam Defendants can insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales by liquor stores cut off any relationship between the consumers and the manufacturer. This is particularly true in this case where Plaintiffs cannot seek a remedy directly from the liquor stores based on misrepresentations allegedly made by the Beam Defendants themselves as to the "all-natural" nature of Skinny Girl Margarita. Accordingly, this Court finds that where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationship between the parties under New Jersey law.[6]

In so finding, the Court agrees with the distinction outlined by the Honorable Ste-

---

not result in the manufacturer's unjust enrichment." 2010 WL 1372308, at *15.

**6.** The Court notes that in *Lee v. Carter–Reed Co.*, 203 N.J. 496, 4 A.3d 561 (2010), a consumer class action with remarkably similar facts to the present case, it appears that a consumer's unjust enrichment claim was not dismissed at any point in the proceedings for failing to state a claim and survived to the class certification stage. In *Lee,* the plaintiff consumers specifically alleged that they pur-

chased the product at issue through retailers like CVS based on false representations the manufacturer made about the product and its benefits. Although the Court recognizes that *Lee* does not specifically hold that an unjust enrichment claim can proceed even where the consumer purchased the product through a retailer and not the manufacturer, it certainly indicates that New Jersey law does not apply a bright line rule to prohibit such claims.

phen T. Brown, U.S.M.J., in the South District of Florida in *Romano v. Motorola, Inc.*, No. 07–CIV–60517, 2007 WL 4199781, at \*2 (Nov. 26, 2007). In *Romano*, Judge Brown similarly denied the defendant manufacturer's motion to dismiss a count for unjust enrichment in a proposed consumer class action where plaintiffs had purchased certain cellular telephones. Interpreting a requirement under Florida law that a claim for unjust enrichment can only lie where the plaintiff alleges that he conferred a direct benefit on the defendant, Judge Brown explained that the defendant manufacturer "erroneously equate[d] direct contact with direct benefit" by arguing that consumers purchases of cell phones through retailers, as opposed to the manufacturer, did not confer a direct benefit on the manufacturer. *Id.* Judge Brown concluded that although the phones were "ultimately sold through the retailer, Motorola … directly benefitted through profits earned from the sale of the phone" particularly in light of the manufacturer efforts to market the phone directly to consumers. *Id.* Accordingly, Judge Brown denied the defendant manufacturer's motion to dismiss the unjust enrichment claim finding that "while there was no direct contact between the manufacturer Motorola and Plaintiff, by purchasing the … phone, Plaintiff directly conferred a benefit on Motorola in the form of payment for the phone." *Id.*

Other federal courts have reached similar conclusions. *See, e.g., Williams v. Wells Fargo Bank N.A.*, No. 11–21233, 2011 WL 4368980, at \*9 (S.D.Fla. Sept. 19, 2011) (refusing to dismiss plaintiffs' unjust enrichment claim where allegations of the complaint were sufficient to show a direct benefit was conferred on defendants and recognizing that "just because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim … to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims."); *In re TFT–LCD (Flat Panel) Antitrust Litigation*, No. M 07–1827, 2011 WL 4345446, at \*4 (N.D.Cal. Sept. 15, 2011) (denying defendants' summary judgment motion on plaintiff's unjust enrichment claims and agreeing "with plaintiffs that defendants need not have received the benefit directly from [the plaintiff]. Rather, [the plaintiff] must only show that defendants received a benefit and it came at his expense."); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F.Supp.2d 380, 444 (E.D.Pa.2010) (denying product manufacturer's motion to dismiss claim for unjust enrichment because "[t]he relationship between plaintiffs and GSK is not so remote that plaintiffs' unjust enrichment claim should be dismissed outright …. the plaintiffs' purchase of Wellbutrin SR was a benefit conferred on GSK even though plaintiffs did not purchase the drug directly from GSK" where plaintiffs alleged "that monies they paid for Wellbutrin SR … end[ed] up in the hands of GSK.").

In applying the Rule 12(b)(6) standard to allegations of Plaintiffs' second amended complaint, the Court finds that Plaintiffs have alleged sufficient facts to make out a plausible claim for relief for unjust enrichment because the complaint clearly asserts that the Beam Defendants "received funds that they otherwise would not have received and which it would be unjust for them to retain" as a result of their allegedly fraudulent conduct and purported misrepresentations. (Second Am. Compl. ¶ 77.) Plaintiffs specifically alleged that "Plaintiffs and other Class members would not have purchased Skinny Girl Margarita products, absent Defendants' misrepresentations, if the true facts had

been known." (Second Am. Compl. ¶ 75.) Accepting Plaintiffs' allegations as true that they would not have purchased Skinny Girl Margarita from the liquor store retailers involved if not for the Beam Defendants' alleged misrepresentations and that these purchases therefore resulted in Defendants receiving funds they would not have otherwise received through the wholesale distribution of their products, Plaintiffs' second amended complaint sufficiently alleges a plausible claim for relief.[7]

## V. CONCLUSION

For the reasons set forth herein, the Beam Defendants' motion [Doc. No. 10] is denied. An Order consistent with this Opinion will be entered.

7. Allowing Plaintiffs' unjust enrichment claim to go forward at this early stage of the litigation should by no means be construed as a ruling by this Court that Plaintiffs will be able to sustain this claim at a later stage of the proceedings. What facts Plaintiffs develop through discovery and how those facts will be viewed in light of the legal standards of an unjust enrichment claim under New Jersey law remain to be seen. This Court holds only and narrowly that Plaintiffs have alleged sufficient facts for this claim to proceed past the pleading stage. Rule 12(b)(6) does not impose a "probability" standard at this point in the proceedings, but rather a "plausibility" standard. This Court finds merely that under New Jersey law, Plaintiffs' claim for unjust enrichment is plausible as alleged in the second amended complaint.